FILED
3rd JUDICIAL DISTRICT COURT
Dona Ana County
12/11/2020 2:49 PM
DAVID S. BORUNDA
CLERK OF THE COURT
Josephina Gomez

**STATE OF NEW MEXICO**
**COUNTY OF DONA ANA**
**THIRD JUDICIAL DISTRICT COURT**

**JOEL A. MELENDEZ,**
            **Plaintiff,**
**v.**

**CITY OF LAS CRUCES**
**POLICE DEPARTMENT,**
**and D'ANTHANY ROOHR,**
            **Defendants.**

**D-307-CV-2020-**
   D-307-CV-2020-02571

   Arrieta, Manuel I.

## CIVIL COMPLAINT

COMES NOW the PLAINTIFF, Joel A. Melendez, though his attorneys, Jose R. Coronado and G. Greg Valdez, and for his causes of action against the defendants states as follows:

### THE PARTIES AND JURISDICTION

1.    The Plaintiff is an individual who resides in the City of Las Cruces, County of Dona Ana, State of New Mexico.

2.    The City of Las Cruces is a political subdivision of the State of New Mexico and is situated within the County of Dona Ana, State of New Mexico.

3.    The City of Las Cruces Police Department is a Law Enforcement Agency and is operated as a department or division of the City of Las Cruces.

4.    D'Anthany Roohr (hereinafter, Defendant Roohr) is an individual, who upon information and belief, resides within the City of Las Cruces, County of Dona Ana, State of New Mexico.

5.    Defendant Roohr was acting under the color of state law and in the course and scope of his employment as a law enforcement officer with the Las Cruces Police Department at all times material.

6.    Jurisdiction and venue are proper, as the parties reside in and the subject matter of the suit occurred in Dona Ana County.

EXHIBIT

A

7.    The civil rights claims are brought pursuant to 42 USC Section 1983 & 1988. The New Mexico torts are brought pursuant to New Mexico State Law.  The violation of State rights are brought pursuant to the New Mexico Constitution.

8.    Attached hereto is a copy of the Notice of possible suit required by the New Mexico Tort Claims Act, which was timely filed and served upon the City of Las Cruces.  **Exhibit 1.**

<h3 style="text-align:center">GENERAL ALLEGATIONS OF FACT</h3>

9.    Defendant Roohr applied for employment with or was otherwise recruited by the City of Las Cruces Police Department to attend and participate in a Police Academy during the latter part of 2016 and the early part of 2017.

10.   In February 2017, Defendant Roohr graduated from the City of Las Cruces Police Academy and was given a job as a "police officer in training," with the Las Cruces Police Department.

11.   Upon information and belief, the Las Cruces Police Department maintains policies and procedures which require patrol officers to utilize car mounted video equipment and on-person video equipment when stopping a vehicle or having contact with citizens who have been stopped.

12.   On or about December 23, 2018, at approximately 12:10 p.m., Plaintiff was operating his motor vehicle in the City of Las Cruces.  He was traveling west bound on University Avenue between the Interstate 25 overpass and Locust Street.

13.   Plaintiff was operating a 2005 black Cadillac Escalade equipped with oversize rims and tires.

14.   Plaintiff was playing loud music on the vehicle's stereo system.

15.   As Plaintiff traveled west on University Avenue, he saw a City of Las Cruces Police Unit also traveling west on University Avenue several yards ahead of him.  Plaintiff saw other

2

vehicles traveling west on University Avenue.  None of those vehicles were situated between Plaintiff's vehicle and the police unit.

16.  Upon information and belief, the police unit belonged to the Las Cruces Police Department and was operated by Defendant Roohr.

17.  As Defendant Roohr and other traffic approached the intersection of Locust Street and University Avenue, Defendant Roohr moved into the farthest right lane of University Avenue travelling westbound.

18.  Defendant Roohr stopped his vehicle at the intersection of Locust Street and University Avenue, which had a red traffic light for westbound traffic.

19.  Plaintiff approached Defendant Roohr's unit from behind, and brought his vehicle to a stop just behind the police unit.

20.  As the two vehicles were stopped, Plaintiff fiddled with his stereo music selector and waited for Defendant Roohr to turn right onto Locust Street.

21.  Defendant Roohr turned right onto Locust Street and travelled northbound on Locust Street.

22. On the northwest corner of University Avenue and Locust Street was a restaurant known as Dublin's Bar and Restaurant.  It was part of the Pan Am Plaza strip mall, but was a stand-alone building.

23.  Plaintiff turned right onto Locust Street travelling northbound behind Defendant Roohr.

24.  Before reaching the intersection of Locust Street and Wisconsin Avenue, Defendant Roohr moved his unit to the right shoulder of Locust Street, and turned into a public driveway that accessed the parking lot behind Dublin's Bar and Restaurant.

25.  Plaintiff passed Defendant Roohr's unit and continued traveling northbound on Locust Street.

26.  When Plaintiff passed Defendant Roohr's unit as it sat in the driveway that accessed the parking lot behind Dublin's Bar and Restaurant, he noticed it did not have on its emergency lights, siren, or other emergency equipment.

27.  Plaintiff does not know when Defendant Roohr engaged his police unit emergency equipment.

28. The first city street to the north of University Avenue that intersects Locust Street is Wisconsin Avenue.

29.  The distance between University Avenue and Wisconsin Avenue is one city block, or approximately 3/10ths of a mile.

30.  It takes less than one minute under normal driving conditions to travel from University Avenue to the intersection of Locust Street and Wisconsin Avenue.

31.  As Plaintiff approached the Territorial Village strip mall located on the west side of Locust Street, he activated his left turn signal, then turned left into the parking lot and parked in front of Halo's Bar.

32.  Plaintiff turned left at the point where Wisconsin Avenue intersects Locust Street on the east side of Locust Street.

33.  Wisconsin Avenue does not continue on the west side of Locust Street.

34.  Upon entering the parking lot of the Territorial Village strip mall, Plaintiff parked in front of Halo's Bar.  Plaintiff got out of his vehicle and walked to the front door of Halo's Bar.  As he reached for the door handle, Plaintiff was tackled from behind and thrown down onto the cement sidewalk.

35.  Plaintiff did not know who tackled him.

36.  A few minutes after being tackled, Plaintiff saw that it was a police officer that had tackled him.  He later learned the officer was Defendant Roohr.

37.  When Plaintiff was tackled and thrown to the ground, he injured his right shoulder and left ankle.

38.  Defendant Roohr, with the help of other police officers, arrested and handcuffed Plaintiff when he was laying on the cement sidewalk in front of Halo's Bar.

39.  After Plaintiff was arrested, Defendant Roohr took him to the Mountain View Regional Medical Center Emergency Room.

40.  Defendant Roohr's police unit was equipped with a dash mounted video camera, but he did not engage it.

41.  Defendant Roohr was equipped with a body mounted video camera, but he did not engage it.

42.  Defendant Roohr told the emergency room doctor that Plaintiff was complaining about a shoulder injury.

43.  Plaintiff told the emergency room doctor that his ankle hurt, and he asked the doctor if he would look at it.

44.  Defendant Roohr restated to the emergency room doctor that Plaintiff only complained about his shoulder.  As a result of what Defendant Roohr told the emergency room doctor, the doctor did not check Plaintiff's ankle.

45.   Once the emergency room doctor "cleared" Plaintiff for jail, he was taken to the Dona Ana County Detention Center.

46.  At the Detention Center intake Plaintiff complained about his ankle; however, because there was no hospital medical entry addressing an ankle injury, Detention Center medical personnel did not address Plaintiff's complaint about ankle pain.

47.   Upon release from the Detention Center, Plaintiff went to Memorial Medical Center to have his ankle injury addressed.

48.   At Memorial Medical Center, medical personnel took x-rays of his wrists, shoulder, ankle, and tibia.

49.   X-rays disclosed that Plaintiff had a break in the bones of his ankle and a break in the tibia.

50.   Plaintiff underwent surgery and had pins placed in his ankle and tibia.

51.   The shoulder injury resolved; the wrist injuries resolved; the ankle required surgery and the insertion of metal screws.  The ankle and tibia injury has not resolved.

### COUNT ONE: MUNICIPAL LIABILITY: FAILURE TO TRAIN AND SUPERVISE DEFENDANT ROOHR

52.  Defendant City of Las Cruces is a policy maker responsible for the hiring, training, and supervision of its employees.

53.  Upon information and belief, Defendant City of Las Cruces had policies, customs, and practices established on December 23, 2018, requiring individual police officers to comply with its policy and procedure to utilize their camera equipment, both audio and video, when stopping or engaging citizens who are stopped.

54.  Upon information and belief, Defendant Roohr has failed in the past to use the dash mounted video-camera or the body-mounted audio camera, although pursuant to City of Las Cruces policy and procedure he is required to use those cameras when making a stop or engaging a citizen.

55.  Defendant City of Las Cruces' failure to enforce its policy and procedure that police officers engage their video-camera and audio-camera when stopping or engaging a citizen, proximately caused the injury to Plaintiff.

56. Upon information and belief, Defendant City of Las Cruces had policies and procedures in place to investigate the employment history of any person's application for employment as a Las Cruces Police Officer. The policy and procedures were established to assure that any applicant for employment who was not qualified for employment because of a violent or problematic prior history was not hired.

57. Upon information and belief, Defendant Roohr was previously employed as a security guard in El Paso, Texas and as a Military Police Officer with the armed forces.

58. Defendant City of Las Cruces had a duty to investigate Defendant Roohr's prior employments before hiring him as a police officer. Upon information and belief, Defendant City of Las Cruces failed to investigate or conduct an adequate investigation of Defendant Roohr's prior employment history before hiring him.

59. Defendant City of Las Cruces' inadequate investigation into Defendant Roohr's prior employment history resulted in Defendant City of Las Cruces' failure to hire a qualified individual to become a Las Cruces Police Officer. Defendant City of Las Cruces' failure contributed to and proximately caused Plaintiff's harm.

60. Plaintiff should be awarded damages against Defendant City of Las Cruces in an amount to be proven at trial.

**COUNT TWO: STOP AND ARREST OF PLAINTIFF IN VIOLATION OF ARTICLE II SECTION 10 OF THE NEW MEXICO CONSTITUTION**

61. The allegations set forth above in paragraphs 1 to 60 are incorporated by reference as if fully set forth herein.

62. Defendant Roohr acted under color of state law when he wrongly committed the act complained of herein.

63. When Defendant Roohr seized and arrested Plaintiff he lacked probable cause to believe that Plaintiff had committed any violation of law.

64.   Defendant Roohr's seizure and arrest of Plaintiff was in violation of Article II Section 10 of the New Mexico Constitution.

65.   Defendant Roohr's seizure and arrest of Plaintiff constituted an act of gross negligence.

66.   As a result of Defendant Roohr's actions, Plaintiff sustained damages, including injury to his person and livelihood.  He also incurred medical expenses, and suffered lost employment earnings and pain and suffering.

67.   Plaintiff is entitled to monetary damages in an amount to be proven at trial.

## COUNT THREE: CAUSE OF ACTION FOR BATTERY
### (NEW MEXICO TORT)

68. The allegations set forth above in paragraphs 1 through 67 are incorporated by reference as if fully set forth herein.

69. Defendant Roohr's act of tackling and slamming Plaintiff to the ground constituted an offensive physical contact which caused physical injury to him.

70. Defendant Roohr acted without probable cause or reasonable suspicion when he tackled and slammed Plaintiff to the ground.

71. Defendant Roohr waived his immunity under the New Mexico Tort Claim Act when he committed his act.

72. Defendant Roohr's acts were reckless and intentional and of such a nature that an award of punitive damages should be awarded.

73. Plaintiff is entitled to monetary damages in an amount to be proven at trial.

## COUNT FOUR: CAUSE OF ACTION FOR FALSE ARREST
### (NEW MEXICO TORT)

74. The allegations set forth above in paragraphs 1 through 73 are incorporated by reference as if fully set forth herein.

75. Defendant Roohr's act of arresting, confining, and restraining Plaintiff were without

Plaintiff's consent and were committed with knowledge that Defendant Roohr had no lawful authority to do so.

76. Plaintiff is entitled to recover from Defendant Roohr for all damages he suffered.

77. Defendant Roohr acted willfully, knowingly, and purposefully and/or with deliberate indifference to deprive Plaintiff of his rights. As a result of the nature of Defendant Roohr's conduct, Plaintiff is entitled to recover monetary damages in an amount to be proven at trial.

## COUNT FIVE: CAUSE OF ACTION FOR VIOLATION OF AMENDMENT IV
### OF THE UNITED STATES CONSTITUTION
### (Stop, Seizure, and Arrest)

78. The allegations set forth above in paragraphs 1 through 77 are incorporated by reference as if fully set forth herein.

79. Defendant Roohr acted under color of state law when he committed the acts referred to herein.

80. The stop, seizure, and arrest of Plaintiff was not supported by reasonable suspicion or probable cause, and was unlawful.

81. The stop, seizure, and arrest of Plaintiff violated Plaintiff's rights under the Amendment IV of the United States Constitution, guaranteeing him the right to be secure in his person from unreasonable search and seizures.

82. Defendant Roohr acted willfully, knowingly, and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional rights. As a result of Defendant Roohr's conduct, Plaintiff is entitled to recover punitive damages in an amount to be proven at trial.

## COUNT SIX: CAUSE OF ACTION FOR VIOLATION OF AMENDMENT IV
### OF THE UNITED STATES CONSTITUTION
### (Excessive Force)

83. The allegations set for above in paragraphs 1-82 above are incorporated herein by reference as if fully set forth herein.

84. Defendant Roohr acted under color of state law when he committed the acts referred to herein.

85. Defendant Roohr seized and arrested Plaintiff by tackling him and slamming him onto the cement pavement. The force used to do so was excessive and in violation of law.

86. Defendant Roohr's conduct violated Plaintiff's rights under the 4th Amendment to the United States Constitution, guaranteeing him the right to be secure in his person from unreasonable seizures.

87. Defendant Roohr acted willfully, knowingly, and purposefully and/or with deliberate indifference to deprive Plaintiff of his Constitutional rights.  As a result of Defendant Roohr's conduct, Plaintiff is entitled to punitive damages in an amount to be proven at trial.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff seeks the following relief:

1.  Actual and compensatory damages sufficient to make him whole.

2.  Punitive damages against Defendant sufficient to punish them and to deter further wrongdoing.

3.  Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

/s/ Jose R. Coronado
Jose R. Coronado
Attorney for Plaintiff
NM Bar No. 2847
125 W. Griggs Avenue
Las Cruces, NM 88001
(575) 525-2517
(575) 525-2518 – Fax
jose@coronadolawlc.com

/s/ G. Greg Valdez
G. Greg Valdez
Attorney for Plaintiff
NM Bar No. 2773
P.O. Box 516
Las Cruces, NM 88004
(575) 312-2580
g.gregvaldez@gmail.com



# Law Office of José R. Coronado

135 W. Griggs, Las Cruces, New Mexico 88001
(575) 525-2517 Tel. (575) 525-2518 Fax
jose@coronadolawlc.com

January 8, 2019                                              Via Certified Mail

Chief Patrick Gallagher
Las Cruces Police Department
P.O. Box 20000
Las Cruces, NM  88004

Mayor Ken Miyagashima
City of Las Cruces
P.O. Box 20000
Las Cruces, NM  88004

Re: **JOEL MELENDEZ**
Date of Incident:  December 25, 2018

Gentlemen:

On December 25, 2018, Mr. Melendez was pulled over by Las Cruces Police Department police officers. During the arrest procedure, police officers broke Mr. Melendez's ankle and injuried his wrist. He still has numbness to his hand. The officers may not have followed protocol, and may have made mistakes leading to unnecessary physical trauma to Mr. Melendez.

Mr. Melendez has asked me to provide the City of Las Cruces and the Las Cruces Police Department, notice that he may file a tort claim action against all law enforcement officers who may have had some responsibility for his injuries. Mr. Melendez may also exercise any rights he has under he Civil Rights Act. It is unknown at this time whether the Mr. Melendez will pursue any action, but the New Mexico Tort Claim Act requires notice, so notice is being given.

Please accept this letter as notice to you under the New Mexico Tort Claim Act, Section 41-4-1 et seq., and the federal civil rights act and any other federal or state law or statute, that Mr. Melendez may pursue any legal claim they have pursuant to his rights under law.

Thank you for looking into this matter. We look forward to discussing this matter with you once you have completed your investigation.

Sincerely,

Jose R. Coronado
JRC/la

cc:        File

EXHIBIT 1