# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOEL A. MELENDEZ,

      Plaintiff,

v.                                                                                                                                        No. CIV 21-00061 RB/SMV

CITY OF LAS CRUCES POLICE
DEPARTMENT and D'ANTHANY
ROOHR,

      Defendants.

## MEMORANDUM OPINION AND ORDER

      On December 23, 2018, Las Cruces Police Department (LCPD) Officer D'Anthany Roohr activated his emergency lights to perform a traffic stop on a vehicle driven by Joel Melendez. Melendez pulled into a parking lot but then exited his vehicle and ignored Roohr's command to stop. Roohr tackled Melendez, and when Melendez resisted the tackle, Roohr performed a vascular neck restraint. Roohr arrested Melendez for resisting, evading, or obstructing an officer, and Melendez pled no contest to the charge.

      Melendez now brings federal and state claims against Roohr for illegal stop, seizure, and arrest and for excessive force. Roohr moves for summary judgment. The Court finds that Melendez's federal claim for illegal stop, seizure, and arrest is barred under the *Heck* doctrine. Further, the Court finds Roohr is entitled to qualified immunity for the excessive force claim. The Court dismisses the federal claims and declines to exercise supplemental jurisdiction over the state law claims.

I.     **Statement of Facts**[1]

On December 23, 2018, shortly after midnight, Roohr was on duty in his police vehicle and stopped at the intersection of University and Locust. (Doc. 44-A at 3.) Melendez, driving his own vehicle, came to an abrupt stop behind Roohr, and Roohr had the impression that Melendez almost struck his unit.[2] (*See, e.g.*, *id.*; Docs. 44-C at 1; 55-A at 6:17–19.) Melendez's "stereo was on pretty loud[,]" and he "was messing with [his] stereo looking for music." (Doc. 44-B at 5.)

Roohr decided to conduct a welfare check on Melendez. (Doc. 44-A at 3.) Roohr pulled into a parking lot and allowed Melendez to pass him.[3] (*Id.*) Once Melendez passed, Roohr pulled out and activated his emergency lights. (*Id.*) Melendez did not pull over in response to the lights,[4] but rather turned left into the parking lot of Halo's Bar, striking a curb on his way in and parking in a handicapped space.[5] (*Id.*) Melendez exited his vehicle. (*Id.*) Roohr got out of his own vehicle

---

[1] In accordance with summary judgment standards, the Court recites all admissible facts in a light most favorable to Melendez. Fed. R. Civ. P. 56; *see also Garrison v. Gambro, Inc.*, 428 F.3d 933, 935 (10th Cir. 2005). The facts are undisputed unless noted.

[2] Roohr described Melendez's stop in several ways. In speaking to other officers at the scene, Roohr said that Melendez "pull[e]d up real close behind [Roohr]." (Doc. 55-A at 6:17–19.) In his written Narrative report of the incident, he stated that Melendez "came to a screeching halt, nearly striking [Roohr's] vehicle." (Doc. 44-A at 3.) And in the Criminal Complaint, Roohr asserted that Melendez "almost [struck Roohr's] unit." (Doc. 44-C at 1.) Melendez asserts that "there is a huge void between 'almost striking' a vehicle and" stopping "real close" to another vehicle." (Doc. 55 at 7 (citation omitted).) He does not, however, deny coming to a stop "real close" to Roohr's vehicle, nor does he introduce evidence to show that Roohr's impression of the stop—that Melendez came to a "screeching halt" or "almost struck" the police cruiser—was inaccurate. (*See id.*) Thus, Melendez fails to create a genuine factual dispute.

[3] Melendez disputes that the stop was legal or that it conform[ed] to 'regular patrol' pursuant to relevant police department policies and procedures[,]" but as the Court discusses in Section III(A) and III(B)(i) below, this argument is barred under *Heck*. (*See* Doc. 55 at 7 (citation omitted).)

[4] Melendez cites generally to his responses to interrogatories and asserts that he did not see Roohr's emergency lights. (Doc. 55 at 8 (citing Doc. 44-B).) The cited material does not support his assertion. Melendez asserted that he "had not done anything wrong." (Doc. 44-B at 5.) He stated that he noticed Roohr driving behind him and then he "went to Halo's bar, parked, and walked to the door." (*Id.*) He did *not* affirmatively state that he "did not see emergency lights" or was "unaware law enforcement was pursuing him." (*See id.* at 1–5.) Even if this issue is properly before the Court, Melendez fails to create a genuine factual dispute about whether he saw the emergency lights.

[5] Melendez "maintains the reason his tire struck the curb . . . stems from a defect in the . . . driveway, not careless driving." (Doc. 55 at 8 (citation omitted).) He does not dispute that he struck the curb.

and yelled, "Stop, police!"[6] (*Id.*) Melendez did not stop but "continued to head towards the bar."[7] (*Id.*)

As Melendez reached to open the door to the bar, Roohr tackled him from behind and Melendez fell to the ground. (Doc. 44-B at 2.) Melendez admits that he resisted the use of force. (*See id.*) A second officer "arrived and grabbed [his] arm." (*Id.*) Melendez "noticed that it was [another] police officer." (*Id.*) He remembers that "a bunch of other officers appeared, and they put [him] on [his] stomach" and handcuffed his hands behind his back. (*Id.* at 2–3.) In the transcript of his belt tape of the incident, Roohr told another officer that after Melendez resisted, Roohr "used the vascular neck restraint because [Melendez] started becoming more standoffish."[8] (Doc. 55-A at 7:10–12.) Melendez sustained a strained shoulder, scrapes on his wrists, and a broken ankle. (Doc. 44-B at 3.) It is undisputed that Roohr wore a body camera but failed to turn it on until after Melendez was handcuffed. (*See* Docs. 55 at 5; 60 at 3.)

Roohr charged Melendez with resisting, evading, and obstructing an officer (REO) under N.M. Stat. Ann. § 30-22-1(B) and driving while under the influence (DWI) under N.M. Stat. Ann. § 66-8-102. (*See* Doc. 44-C.) Roohr affirmed in the Criminal Complaint, in relevant part:

---

[6] Melendez disputes this fact on the basis that there is no audio or video recording of the events. (Doc. 55 at 9.) He does not, however, submit an affidavit or deposition testimony in which he affirmatively states that he did not hear Roohr yell at him. Instead, he cites testimony from a witness (Serrano) who opened the door to Halo's Bar just as Roohr "grab[bed] Melendez from behind." (*See* Doc. 55-D at 7:5–8.) Serrano did not state that she witnessed the entire encounter. (*See id.*) Assuming this issue is properly before the Court, Serrano's testimony is insufficient to create a genuine factual dispute about whether Roohr yelled to Melendez.

[7] Melendez "disputes this fact as an incomplete recollection of the events." (Doc. 55 at 9.) He asserts that he "did park and exit his vehicle in addition to proceeding to the front entrance of Halo's, but he was unaware of whom he was 'resisting' upon being tackled by Officer Roohr." (*Id.* (citing Doc. 44-B).) Notably, Melendez does not specifically dispute that he continued to walk toward the bar after Roohr yelled to him. He fails to create a genuine factual dispute on this issue.

[8] Roohr purports to dispute this fact because Melendez did not "mention a claimed vascular neck restraint" in any of his responses to Defendants' discovery requests. (*See* Doc. 60 at 2–3 (citations omitted).) Roohr does not, however, submit an affidavit to show that he did not use a vascular neck restraint and, thus, fails to create a genuine dispute of fact on this issue.

3

> D. Upon utilizing my lights Mr. Melendez proceeded to drive striking the curb and parked in a handicap . . . spot . . . .
> E. Mr. Melendez did exit the vehicle and was instructed to stay in his vehicle. Mr. Melendez did acknowledge my presence by looking in my direction and proceeded towards the bar.
> F. Mr. Melendez did actively resist by pulling away from me as I attempted to stop him.

(*Id.*) Pursuant to a plea agreement, a Doña Ana county magistrate judge dismissed the DWI charge and Melendez pled no contest to the REO charge. (*See* Doc. 44-D.) The No Contest Plea Proceeding provides:

> [The magistrate judge has] ascertained the following facts:
>
> That the defendant understands the charges set forth in the complaint and agrees to plead to [REO] . . . .
> That, if pleading no contest, [Melendez] has been advised and understands that a plea of no contest has the same effect as a plea of guilty in this court.
> That there is a factual basis for the plea.
> That under the circumstances, it is reasonable that the defendant plea as reflected above.
> That the defendant understands that a plea of guilty or no contest may have an effect upon . . . the defendant's legal rights and personal opportunities . . . .[9]

(*Id.* at 1.) The magistrate judge signed the No Contest Plea on August 25, 2020, and Melendez telephonically signed the form on the same date. (*Id.* at 2.) On August 27, 2020, a Judgment & Sentence was entered in the Doña Ana County Magistrate Court, and Melendez was found guilty of REO pursuant to his no contest plea. (Doc. 44-E at 1.) The Judgment & Sentence provides:

> It is adjudged that [Melendez] is Guilty and has received a Deferred Sentence. Sentencing is deferred, on conditions of probation . . . . [Melendez] is advised that completion of all terms and conditions of a deferred sentence shall result in dismissal of this charge, but the record of the charge will still exist.[10]

---

[9] Melendez disputes this fact on the basis that *he* "did not agree to any factual basis . . . ." (Doc. 55 at 11.) Whether he now agrees or not, there is no dispute that the magistrate judge found facts sufficient to support the charge or that Melendez ultimately pled no contest to REO.

[10] Melendez disputes this fact and asserts that "[h]is successful completion of probation resulted in a dismissal of the charge[,]" which is "a means of judicial clemency." (Doc. 55 at 12 (citation omitted).) He believes that this means that he "has not been convicted for [REO]." (*See id.* (citation omitted).) As discussed below in Section III(A), the Court disagrees with this conclusion.

4

(*Id.*)

Melendez filed a civil complaint against Roohr and LCPD on December 11, 2020, in state court. (*See* Doc. 1-A (Compl.) at 1.) Defendants removed the matter to this Court on January 25, 2021. (*See* Doc. 1.) Melendez made one federal claim against the LCPD for Municipal Liability Failure to Train and Supervise, but he has since dismissed the claim with prejudice. (*See* Compl. ¶¶ 52–60; Doc. 59.) The following claims remain against Roohr: Count II: Illegal Stop and Arrest in violation of Article II Section 10 of the New Mexico Constitution; Count III: Battery under the New Mexico Tort Claims Act (NMTCA); Count IV: False Arrest under the NMTCA; Count V: Illegal Stop, Seizure, and Arrest under the Fourth Amendment; and Count VI: Excessive Force under the Fourth Amendment. (*See* Compl. ¶¶ 61–87.) Roohr now moves for summary judgment.

**II.   Legal Standards**

**A.   Standard for Motions for Summary Judgment**

"Summary judgment is proper if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Halley v. Huckaby*, 902 F.3d 2236, 1143 (10th Cir. 2018) (citing *McCoy v. Meyers*, 887 F.3d 1034, 1044 (10th Cir. 2018)). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" *Tanner v. San Juan Cnty. Sheriff's Office*, 864 F. Supp. 2d 1090, 1106 (D.N.M. 2012) (quoting *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991)) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Once the movant meets this burden, rule 56 requires the non-moving party to designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)). A party

cannot "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation." *Id.* (quotation and citations omitted). Instead, the non-moving party must come forward with "sufficient evidence on which the factfinder could reasonably find" in their favor. *Id.* (citations omitted). Evidence that is "merely colorable," *Anderson*, 477 U.S. at 249, or consists only of "[u]nsubstantiated allegations[,]" *McCoy*, 887 F.3d at 1044, is insufficient.

### B. Qualified Immunity Standard

The Court reviews summary judgment motions based on a qualified immunity defense somewhat differently. *See Halley*, 902 F.3d at 1144. "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id.* (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011)). "A constitutional right is clearly established if it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). "A Supreme Court or Tenth Circuit decision on point or the weight of authority from other courts can clearly establish a right." *Id.* (citation omitted). "Generally, 'existing precedent must have placed the statutory or constitutional question beyond debate' to clearly establish a right." *Id.* (quoting *Redmond v. Crowther*, 882 F.3d 927, 935 (10th Cir. 2018)). "The question is not whether a 'broad general proposition' was clearly established, but 'whether the violative nature of particular conduct [was] clearly established.'" *Id.* (quoting *Redmond*, 882 F.3d at 935) (internal quotation marks omitted).

"If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment . . . ." *Id.* (quoting *Koch*, 660 F.3d at 1238). And while the "Court must construe the facts in the light most favorable to the plaintiff as

6

the nonmoving party, 'a plaintiff's version of the facts must find support in the record.'" *Koch*, 660 F.3d at 1238 (quoting *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009)). If the plaintiff's "version of the facts is 'blatantly contradicted by the record, so that no reasonable jury could believe it,' then [the Court] 'should not adopt that version of the facts.'" *Halley*, 902 F.3d at 1144 (quoting *Thomson*, 584 F.3d at 1312).

The Court may address the qualified immunity analysis in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). In fact, where a court is "firmly convinced the law is not clearly established" and the "constitutional violation question is so factbound that the decision provides little guidance for future cases[,]" it is prudent to proceed directly to the clearly established prong of the analysis. *See Tanner*, 864 F. Supp. 2d at 1108 (quoting *Kerns v. Bader*, 663 F.3d 1173, 1180–81 (10th Cir. 2011) (quotation marks omitted)).

**III.   Analysis**

    **A.   Melendez's Fourth Amendment Claim for Illegal Stop and Seizure is barred by the *Heck* doctrine.**

Melendez asserts that the stop, seizure, and arrest violated his rights under the Fourth Amendment because Roohr had neither reasonable suspicion nor probable cause to believe that Melendez was violating the law. (Compl. ¶¶ 78–82.) Roohr argues that this claim is barred under *Heck v. Humphrey*, 512 U.S. 477 (1994). (Doc. 44 at 7–11.) "Under *Heck v. Humphrey*, courts cannot award monetary damages for § 1983 civil rights violations when doing so 'would necessarily imply the invalidity of [a prisoner's] conviction or sentence' and the Plaintiff has not demonstrated 'that the conviction or sentence has already been invalidated.'" *Zumwalt v. Evans*, No. 1:20-CV-01276-KWR-LF, 2021 WL 3051846, at *3 (D.N.M. July 20, 2021) (quoting *Heck*, 512 U.S. at 487; *Havens v. Johnson*, 783 F.3d 776, 782 (10th Cir. 2015)). In *Heck*, the Supreme

7

Court provided the hypothetical of a state defendant, "convicted of and sentenced for the crime of resisting arrest[,]" who "brings a § 1983 action against the arresting officer, seeking damages for violation of his Fourth Amendment right to be free from unreasonable seizures." *Heck*, 512 U.S. at 486 n.6. "[T]o prevail in this § 1983 action, he would have to negate an element of the offense of which he has been convicted[,]" that is, the element of a lawful arrest. *Id.* This hypothetical is apropos of the case at bar.

Under New Mexico law, "[r]esisting, evading or obstructing an officer consists of . . . intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him." § 30-22-1(B).

> To establish a defendant's guilt for resisting officers under New Mexico's § 30-22-1, a party must show that: (i) the officer who gave the orders was lawfully discharging his or her duty; and (ii) the defendant, with the knowledge that the officer was attempting to apprehend or arrest the defendant, fled, attempted to evade, or evaded the officer.

*Ward v. City of Hobbs*, 398 F. Supp. 3d 991, 1106–07 (D.N.M. 2019) (citing *New Mexico v. Gutierrez*, 162 P.3d 156, 166 (N.M. 2007)). For Roohr to have been in the "lawful discharge" of his duties, the seizure and arrest "must have rested on adequate reasonable suspicion, probable cause, and/or exigent circumstances." *See id.* at 1107 (citation omitted). Melendez contends that Roohr did not have reasonable suspicion or probable cause (*see* Compl. ¶ 80); thus, his § 1983 claim implies the invalidity of his REO conviction. *See Martinez v. City of Albuquerque*, 184 F.3d 1123, 1125 (10th Cir. 1999) (noting that "under the Supreme Court's hypothetical, the lawfulness of the arrest is a necessary element of the criminal offense of resisting arrest. Thus, to prevail in a § 1983 action for false arrest, plaintiff would have to negate the lawfulness element of the resisting arrest offense.").

Melendez contends, though, that his case falls within the exception to the doctrine because he pled no contest and his charge was dismissed. (Doc. 55 at 14.) "The starting point for the application of Heck . . . is the existence of an underlying conviction or sentence that is tied to the conduct alleged in the § 1983 action." *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007). "In other words, a § 1983 action implicates *Heck* only as it relates to the conviction that it would be directly invalidating." *Id.* Melendez argues that according to the terms of the Judgment and Sentence, he no longer has a conviction that implicates *Heck*. (*See* Doc. 55 at 14 (citing Doc. 44-E).) The Court does not agree. "New Mexico defines 'conviction' to include pleas of no contest. *Zumwalt*, 2021 WL 3051846, at *4 (citing N.M. Stat. Ann. § 30-1-11). "New Mexico courts have previously concluded that even though the criminal charge is dismissed after a defendant has completed the period of deferment, the 'conviction' remains." *Benns v. N.M. Dep't of Pub. Safety*, No. A-1-CA-38507, 2022 WL 986383, at *3 (N.M. Ct. App. Mar. 7, 2022) (citations omitted). "Under longstanding New Mexico precedent, a 'conviction' refers to the finding of guilt by plea or by verdict and does not require the imposition of a sentence." *Id.* (citations omitted). "Consequently, [the New Mexico Supreme Court and Court of Appeals] have held that while a deferred sentence may remove the criminal liability, the adjudication of guilt remains and may be taken into account for other purposes." *Id.* (citations omitted). Thus, although the charge was dismissed after Melendez successfully completed the terms and conditions of his deferred sentence, the conviction remains, and the *Heck* doctrine applies.[11] *See also Zumwalt*, 2021 WL

---

[11] Melendez cites *United States v. Reese*, 326 P.3d 454 (N.M. 2014), in support of his position. (*See* Doc. 55 at 15.) In *Reese*, the Tenth Circuit certified "a narrow question" to the state supreme court: "If an otherwise-qualified person has completed a deferred sentence for a felony offense, is that person barred from holding public office without a pardon or certificate from the governor[?]" *See Benns*, 2022 WL 986383, at *4 (quoting *Reese*, 326 P.3d at 455). The *Benns* court explained that "*Reese* did no more than determine the effect of a deferred sentence within the framework of two statutes—a federal statute that specifically defined what constitutes a conviction, and a state statute that tied the restoration of a defendant's civil rights to a sentence imposed." *Id.* at *5. But unlike in *Reese*, Melendez's right to

3051846, at *4 (finding that *Heck* doctrine applied to bar § 1983 claim based on a no contest plea).

Melendez also believes that *Heck* is inapplicable because he did not agree to the factual predicate of the REO charge as part of his no contest plea. (*See* Doc. 55 at 15.) The plaintiff in *Havens* made a similar argument. There, the plaintiff entered an *Alford* plea—a type of guilty plea in which "[h]e did not admit committing the [charged crime], but only that he could be convicted of it." *Havens*, 783 F.3d at 784 (citing *North Carolina v. Alford*, 400 U.S. 25 (1970)). In other words, he pled guilty even though he was "unwilling or unable to admit his participation in the acts constituting the crime." *Id.* (quoting *Alford*, 400 U.S. at 37). The Tenth Circuit held that regardless of the plaintiff's express admission of guilt, "the *Heck* doctrine derives from the existence of a valid conviction, not the mechanism by which the conviction was obtained (such as admissions by the defendant), so it is irrelevant that [the plaintiff] entered an *Alford* plea." *Id.* (citations omitted). The same is true with Melendez's no contest plea. The magistrate judge found there was a factual basis for the charge, and the no contest plea has the same effect as a conviction.

The Court finds the *Heck* doctrine applies to bar Melendez's claim for illegal stop, seizure, and arrest under the Fourth Amendment. Defendants' motion will be granted as to Count V.

    **B.**    **Roohr is entitled to qualified immunity on the claim for excessive force.**

        **1.**    ***Heck*'s applicability to Melendez's excessive force claim.**

Before turning to the analysis of Melendez's excessive force claim, the Court addresses Roohr's argument regarding the significance of the *Heck* doctrine on this claim. (Doc. 44 at 15.) A § 1983 claim for excessive force "is not necessarily inconsistent with a conviction for" REO. *See Havens*, 783 F.3d at 782. "Notwithstanding *Heck*, a plaintiff can claim that a lawful arrest was

---

bring a § 1983 suit does not implicate his civil rights, and "*Reese*'s analysis of how completing the terms of a deferred sentence affects a defendant's civil rights is not dispositive of the question" of whether the *Heck* bar applies. *See id.*

conducted in an unlawful manner." *Baum v. Ortega*, No. CIV 13-1060 RB/KK, 2014 WL 12783111, at *3 (D.N.M. Dec. 1, 2014) (citing *Martinez*, 184 F.3d at 1125). "[T]o the extent [Melendez's] federal suit does not challenge the *lawfulness* of his arrest and conviction (a challenge *Heck* would prohibit at this point), *Heck* does not bar him from pursuing his civil rights claims in federal court." *Martinez*, 184 F.3d at 1125.

"Roohr acknowledges *Heck* does not wholly bar an excessive force claim." (Doc. 44 at 15 (citing *Martinez*, 184 F.3d at 1127).) He asserts, though, that Melendez's no contest plea to REO precludes him from arguing—in the context of the excessive force claim—that he did not know Roohr was an officer, that Roohr was acting unlawfully in attempting to stop him, or that he did not attempt to evade Roohr. (*See id.*) Again, § 30-22-1(B) prohibits "intentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him." Thus, the Court agrees that Melendez may not make any arguments with respect to his excessive force claim that would negate the validity of his REO charge. Consequently, the Court will disregard any argument that Melendez did not know Roohr was an officer, that Roohr acted unlawfully in trying to stop or seize Melendez, or that Melendez did not attempt to evade or resist Roohr, as these all go to the validity of the REO charge. Melendez is not barred from arguing that Roohr "used too much force to respond to the [REO] or that [he] used force after the need for force had disappeared." *See Havens*, 783 F.3d at 782 (citations omitted).

    **2.  Roohr may have used excessive force, but Melendez fails to show that the law was clearly established.**

Courts analyze "claims of excessive force in the context of arrests . . . under the Fourth Amendment's 'objective reasonableness' standard . . . ." *Saucier v. Katz*, 533 U.S. 194, 204–05

(2001), *receded from on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009) (quotation omitted). "A 'court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances.'" *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002)). The Supreme Court in *Graham* articulated factors that courts must "consider in assessing whether the force used was reasonable[, which] include: the alleged crime's severity, the degree of potential threat that the suspect poses to an officer's safety and to others' safety, and the suspect's efforts to resist or evade arrest." *Marquez*, 399 F.3d at 1220 (citation omitted).

Here, Roohr noticed Melendez came to an abrupt stop behind him at a stoplight and decided to perform a welfare check. He activated his emergency lights and Melendez turned into the parking lot of a bar, striking a curb on his way. Melendez exited his vehicle and walked toward the door, despite Roohr yelling at him to stop. Under Melendez's version of the facts, Roohr then immediately tackled Melendez from behind, taking him to the ground and causing injury to his shoulder and ankle. Melendez admits that he resisted Roohr's tackle until he saw the second officer, and the Court accepts for purposes of this motion that Roohr put Melendez in a vascular neck restraint as a result of his resistance.

**Severity of Crime**: Melendez argues that Roohr stopped him only for a welfare check and that this factor "weighs heavily against the use of anything more than minimal force or any force at all . . . ." (Doc. 55 at 21 (citation omitted).) Yet, Roohr's initial use of force (tackling Melendez to the ground) was not related to the welfare check, but to Melendez's conduct in evading an officer by failing to respond to Roohr's lawful command to stop. Still, REO is a misdemeanor. *See* § 30-22-1. The Tenth Circuit noted in *Lee v. Tucker* that "the first *Graham* factor may weigh against

the use of significant force if the crime at issue is a misdemeanor." 904 F.3d 1145, 1149–50 (10th Cir. 2018) (citations omitted). Viewing the facts in a light most favorable to Melendez, the Court concludes that the first *Graham* factor weighs slightly in favor of finding excessive force.

**Degree of Threat**: The second *Graham* factor examines "whether the suspect pose[d] an immediate threat to the safety of the officers or others," *Pauly v. White*, 874 F.3d 1197, 1215 (10th Cir. 2017) (quotation and emphasis omitted), and "is undoubtedly the most important and fact intensive factor in determining the objective reasonableness of an officer's use of force," *id.* at 1216 (quotation marks and citation omitted). Roohr does not argue that Melendez posed any threat to him. (*See* Doc. 44 at 15–18.) The Court finds this factor weighs in favor of finding excessive force.

**Active Resistance or Attempts to Flee**: Under the third factor, the Court considers whether the suspect resisted arrest or attempted to flee. *McCoy*, 887 F.3d at 1051. There is no question here that Melendez resisted Roohr's command to stop. Melendez also admits that he "resisted" Roohr's tackle, and Roohr used a vascular neck restraint in response. Melendez does not complain that Roohr's use of the neck restraint injured him. On the record, this factor weighs slightly against a finding of excessive force.

On balance, the *Graham* factors weigh slightly in favor of finding that Roohr used excessive force on these facts. A reasonable jury could find that Roohr's choice to immediately tackle Melendez when he walked away from a lawful order and then to utilize a vascular neck restraint to counter Melendez's undefined resistance was excessive. Melendez has not, however, cited a single case that would put a reasonable officer on notice that his use of force would violate Melendez's rights under similar facts. Again, Melendez's argument rests on his mistaken position that Roohr employed force as part of a welfare check, rather than in response to Melendez's

resistance (both to the stop and to Roohr's initial tackle). (*See* Doc. 55 at 21 ("Melendez was not under investigation for committing a felony or misdemeanor criminal offense.").)

Roohr cites a variety of cases to show that the use of force was not excessive. (Doc. 44 at 17–18.) For example, in *Giese v. Wichita Police Department*, the Tenth Circuit found that "[w]hen plaintiff, as a suspect, was shown the police officers' credentials and ordered into a police car, and he decided to run, it was not the application of constitutionally excessive force when the officers ran after and tackled him[,]" thereby breaking his arm. 69 F.3d 547, at *2 (10th Cir. 1995). More analogous is the decision in *Yadon v. Hilton*, No. 11-4164-RDR, 2013 WL 160445 (D. Kan. Jan. 15, 2013), *aff'd*, 516 F. App'x 694 (10th Cir. 2013). In *Yadon*, an officer "yelled at [Yadon] to stop, but [Yadon] tried to get into his van." 2013 WL 160445, at *2. The officer "then grabbed [Yadon's] arm (or neck, according to [Yadon]) and tried to pull him away from the van." *Id.* Yadon struggled and another officer "put his elbow underneath [Yadon's] right shoulder and the two of them went to the ground." *Id.* Yadon testified that he was "choked out" and passed out from the restraint. *Id.* at *3. The district court found, and the Tenth Circuit affirmed, "that the officers' conduct did not constitute excessive force." *See id.* at *4–5; *see also* 516 F. App'x at 695. Both courts noted that although Yadon was suspected only of a misdemeanor (disorderly conduct) and posed little threat to the officers, his active resistance to arrest "strongly support[ed] the use of force." 2013 WL 160445, at *4; *see also* 516 F. App'x at 695 (holding that Yadon's resistance "justified the officers' use of force which unfortunately resulted in injuries") (citations omitted).

The Court has performed its own survey of the law and has not found a case that is "'particularized' to the facts of the case." *McGarry v. Bd. of Cnty. Comm'rs for Cnty. of Lincoln*, 294 F. Supp. 3d 1170, 1199 (D.N.M. 2018) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). In fact, the *McGarry* court examined a case with facts that are somewhat on point and also opined

that the law was not clearly established. *See id.* In *McGarry*, the Court found that the *Graham* factors weighed in favor of finding that an officer used excessive force to take down McGarry. 294 F. Supp. 3d at 1199. There, McGarry was suspected of two misdemeanor crimes but did not pose an immediate threat to the officers. *Id.* at 1197. One officer grabbed him and forced him to the ground, and McGarry physically resisted the arrest. *Id.* Even though "a reasonable juror could conclude that [the officer] used excessive force," the court found that the officer was entitled to qualified immunity because McGarry failed to show clearly established authority on point. *Id.* at 1199. The same is true here. Although Roohr's use of force may have been excessive under these circumstances, Melendez fails to point to "a Tenth Circuit or Supreme Court decision 'close enough on point to make the unlawfulness' of the conduct 'apparent.'" *Id.* (quoting *Pauly*, 874 F.3d at 1223). Roohr is entitled to qualified immunity, and the Court will dismiss the excessive force claim with prejudice.

### C. Because the Court dismisses the federal claims, it declines to exercise supplemental jurisdiction over the remaining state claims.

Melendez brought state claims for wrongful stop and seizure, battery, and false arrest. (*See* Compl. ¶¶ 61–77.) "Under 28 U.S.C. § 1367(c)(3), '[t]he district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction.'" *Sabeerin v. Fassler*, No. 1:16-CV-00497 JCH-LF, 2021 WL 1227726, at *8 (D.N.M. Apr. 1, 2021). "If federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Id.* (quoting *Bauchman for Bauchman v. W. High Sch.*, 132 F.3d 542, 549 (10th Cir. 1997)) (citing *Smith v. City of Enid ex rel. Enid City Comm'n*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should,

decline to exercise jurisdiction over any remaining state claims.")). Because the Court grants summary judgment to Roohr and dismisses the federal claims and the remaining claims are based entirely on state law, dismissal of Melendez's state claims is proper. *See id.* Melendez "will not be prejudiced by the dismissal of [his] state-law claims because 28 U.S.C. 1367(d) tolls the statute of limitations on those claims during the pendency of the federal proceeding plus 30 days beyond the dismissal." *See id.*

**THEREFORE,**

**IT IS ORDERED** that the Motion for Summary Judgment (Doc. 44) is **GRANTED in part**. Melendez's claim in Count V (illegal stop, seizure, and arrest) is barred by the *Heck* doctrine, and Roohr is entitled to summary judgment on the basis of qualified immunity on Count VI (excessive force). Both claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that because the Court declines to exercise supplemental jurisdiction over Melendez's remaining state law claims, the Motion for Summary Judgment on Counts II–IV (Doc. 44) is **DENIED AS MOOT** and Melendez's remaining claims (Counts II–Count IV) are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that the Motion to Exclude (Doc. 64) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this matter is **REMANDED** to the Third Judicial District Court, County of Doña Ana, State of New Mexico.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE